IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| L.T. THOMAS, | ) | 4:11CV3161 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT HOUSTON, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner L.T. Thomas's ("Petitioner" or "Thomas") Second Amended Petition for Writ of Habeas Corpus. (Filing No. 36.) Thomas argues that he is entitled to writ of habeas corpus based on the following claims:

Claim One:       Thomas was denied due process of law in violation of the Fourteenth Amendment because the State of Nebraska ("State") failed to correct false statements made by Aybar Crawford.

Claim Two:       Thomas was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because Thomas's post-conviction counsel failed to assign the Aybar Crawford issue as error on appeal.

Claim Three:     Thomas was denied due process of law in violation of the Fourteenth Amendment because the State failed to correct false statements made by Roger Tucker.

Claim Four:      Thomas was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because

Thomas's post-conviction counsel failed to assign the Roger Tucker issue as error on appeal.

Claim Five:    Thomas was denied due process of law in violation of the Fourteenth Amendment because the trial court failed to give the jury a manslaughter instruction.

Claim Six:    Thomas was denied due process of law and a fair trial in violation of the Fourteenth Amendment because Crime Scene Investigator David Kofoed tampered with and destroyed evidence material to Thomas's self-defense claim.

(*Id.*)  For the reasons set forth below, a grant of a writ of habeas corpus is not warranted on any of these issues.

## I.  BACKGROUND

**A.    Conviction**

The State charged Thomas by information in the Douglas County District Court ("state district court") with first degree murder, first degree assault, and two counts of use of a firearm to commit a felony in the commission of these felonies.  *State v. Thomas*, 637 N.W.2d 632, 644 (Neb. 2002).  The State subsequently filed an amended information alleging that Thomas was a habitual criminal.  *Id.*  The evidence presented at trial showed that:

On June 17, 1994, Thomas shot two men who were in a car near the Stage II lounge in Omaha, Nebraska. Phillip White, the driver, was shot in the left leg, and Rafael Petitphait, a passenger, was shot in the back, head, and left leg.

2

Following the shooting, White drove away at a high rate of speed. Shortly thereafter, the car ran over a curb and into a brick building at 24th Street and Patrick Avenue. White died of head injuries sustained in the automobile accident.

Prior to the shooting, Thomas met Demitrius Simpson and Russell Wills at the Stage II lounge. The group left the lounge and were standing near Thomas' car when a fight broke out between two women. Simpson attempted to stop the fight because he knew one of the women. White and Petitphait were among the crowd that gathered in the parking lot outside the lounge. As Petitphait also attempted to stop the fight, he was struck by a man who was later identified as Simpson. Petitphait stopped White from going after Simpson because White had a .22 caliber gun, which he always carried with him. The gun was not operational, Petitphait said.

After the fight, some of the bystanders teased Petitphait about not fighting back. Petitphait approached Simpson, and the two began to fight. Simpson said he was attacked by several of Petitphait's friends. Petitphait testified that he kept hitting Simpson until someone pulled him off. At some point in time, shots were fired into the air, and the crowd began to disperse.

Thomas testified that he was grabbed during the fight between Petitphait and Simpson and that someone pointed a gun at his head. As Thomas ran away, he heard shots fired. Thomas moved his car out of the parking lot, took his gun out of the trunk, and walked back to the scene of the fight. A car approached, and Thomas heard Petitphait say, "Blood, smoke that nigger." Thomas claimed that the driver waved a gun. Thomas testified that he ducked and then stood up and started shooting in self-defense.

Petitphait testified that as he and White were stopped at the traffic light at 30th and Bedford Streets, they heard gunshots coming from the rear of the car. When White realized Petitphait had been shot, he said he was going to drive to a hospital. As they drove away, White said he had also been shot. Shortly before the crash, White said he could not make it to the hospital. The car hit a curb and then crashed into a building. A gun was found on the floor of the driver's side of White's car.

3

> Testimony was presented to establish that White was speeding and that
> he was intoxicated.

*Id.* at 643-644.

On February 8, 1995, a jury found Thomas guilty of second degree murder, first degree assault, and two counts of use of a firearm to commit a felony. (Filing No. 10-20 at CM/ECF pp. 31-32.) Thereafter, the state district court sentenced Thomas to prison terms of 20 years to life for second degree murder, 12 to 14 years for use of a firearm to commit second degree murder, 12 to 14 years for first degree assault, and 10 to 12 years for use of a firearm to commit first degree assault. (*Id.* at CM/ECF pp. 114-115.) The state district court ordered that the sentences be served consecutively. (*Id.*)

Thomas's appeal from his conviction and sentence was dismissed by the Nebraska Court of Appeals on January 9, 1996, for lack of jurisdiction because Thomas's trial counsel signed Thomas's poverty affidavit instead of Thomas. (Filing No. 12-16 at CM/ECF p. 2.)

## B.    First Post-Conviction Motion

Thomas filed a motion for post-conviction relief ("post-conviction motion") in the state district court on July 22, 1998. (Beginning at Filing No. 12-1 at CM/ECF p. 70.) On September 6, 2000, the state district court granted Thomas post-conviction relief. (Filing No. 12-3 at CM/ECF pp. 87-88.) It determined that Thomas's counsel failed to perfect a direct appeal, and that counsel's conduct was presumptively prejudicial. (*Id.* at CM/ECF p. 88.) As relief, the state district court granted Thomas a new direct appeal. (*Id.*)

## C.    New Direct Appeal

On October 4, 2000, Thomas filed a notice of appeal from the original criminal prosecution. (Filing No. 12-1 at CM/ECF p. 1.) Thomas raised numerous arguments on appeal, including Claims One and Five now raised in his Second Amended Petition for Writ of Habeas Corpus (i.e., that the State failed to correct false statements made by Aybar Crawford, and that the trial court failed to give the jury a manslaughter instruction).

On November 7, 2000, the Nebraska Supreme Court ordered the appeal moved to its docket from the docket of the Nebraska Court of Appeals. (Filing No. 12-16 at CM/ECF p. 5.)   On January 22, 2002, the Nebraska Supreme Court affirmed Thomas's convictions, but vacated his sentences.   The court determined that the evidence received at Thomas's enhancement hearing was insufficient to support a finding that Thomas was a habitual criminal.  *Thomas*, 637 N.W.2d at 658-659.  The court remanded the case "with directions for a new enhancement hearing and for resentencing."  *Id.* at 659.

## D.    Resentencing and Appeal

Following enhancement proceedings, the state district court found that Thomas was a habitual criminal. (Filing No. 10-1 at CM/ECF p. 42.)  On February 6, 2003, the state district court resentenced Thomas to consecutive prison sentences of 20 years to life for second degree murder, 10 to 12 years on the first related weapons conviction, 10 to 12 years for assault in the first degree, and 10 to 12 years on the second related weapons conviction.  (*Id.* at CM/ECF pp. 65-66.)  Thomas timely appealed to the Nebraska Supreme Court.  The court affirmed the judgment of the state district court in a detailed opinion.  *State v. Thomas*, 685 N.W.2d 69 (Neb. 2004).

### E.    Second Post-Conviction Motion and Appeal

Thomas filed a second motion for post-conviction relief on March 22, 2005, in the state district court. (Beginning at Filing No. 12-10 at CM/ECF p. 13.) Thomas raised numerous arguments in his second post-conviction motion, including Claims One and Three now raised in his Second Amended Petition for Writ of Habeas Corpus (i.e., that the State failed to correct false statements made by Aybar Crawford and Roger Tucker).

The state district court denied Thomas's post-conviction motion in a long and detailed opinion on October 9, 2008. (Filing No. 12-14 at CM/ECF pp. 48-111.) Thomas timely appealed the denial to the Nebraska Supreme Court, which summarily affirmed the judgment of the state district court. (Filing No. 12-16 at CM/ECF p. 16.)

### F.    Motion for New Trial and Appeal

On May 21, 2010, Thomas filed a Motion for New Trial and DNA Testing. (Filing No. 12-15 at 17.) In his motion, Thomas argued that he should receive a new trial because Crime Scene Investigator David Kofoed tampered with and destroyed evidence material to Thomas's self-defense claim (i.e, Claim Six of Thomas's Second Amended Petition for Writ of Habeas Corpus). (*Id.*) The state district court denied Thomas's motion in a detailed opinion on August 24, 2010. (*Id.* at CM/ECF p. 26.) Thomas appealed, and the Nebraska Supreme Court summarily affirmed the judgment of the state district court. (Filing No. 12-16 at CM/ECF p. 20.)

### G.    Habeas Corpus Petitions

Thomas timely filed his Petition in this court on September 23, 2011. (Filing No. 1.) In light of the complicated procedural and legal issues involved in this matter, the court appointed counsel to represent Thomas. Thereafter, through appointed counsel, Thomas filed an Amended Petition for Writ of Habeas Corpus on August 10,

6

2012, and a Second Amended Petition for Writ of Habeas Corpus on October 12, 2012. (Filing Nos. 26 and 36.) Thomas's Second Amended Petition for Writ of Habeas Corpus is the operative petition in this matter.

In response to Thomas's petitions, Respondent filed numerous documents, including answers, briefs, and the relevant state court records.[1] (Filing Nos. 10-14, 29-30, and 40.) The court deems this matter fully submitted.

## II.  STANDARD OF REVIEW

### A.    Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor, 529 U.S. 362 (2000),* a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from

-----

[1]The court has carefully reviewed the voluminous state court records and notes there are numerous pages missing from the transcript of Petitioner's trial. (*See, e.g.*, missing pages from Rafael Petitphait's testimony at Filing No. 10-6 at CM/ECF pp. 91-92 (five pages missing), 95-95 (one page missing), 99-100 (one page missing), 110-112 (one page missing), and 113-114 (three pages missing).) Because none of the missing pages were relevant to the court's opinion in this matter, the court did not direct Respondent to resubmit the state court records. *See* Rule 5(c) of the Rules Governing Section 2254 Cases ("The respondent must attach to the answer parts of the transcript that the respondent considers relevant. The judge may order that the respondent furnish other parts of existing transcripts . . . .").

one of that Court's cases despite confronting indistinguishable facts. 529 U.S. at 405-406. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted). The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* The Supreme Court agrees, stating:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S. Ct. at 784.

## B.     Exhaustion Requirement

As set forth in 28 U.S.C. § 2254(b)(1):

(b)(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)     the applicant has exhausted the remedies available in the courts of the State; or

9

> (B)  (i)  there is an absence of available State corrective process; or
>
> (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts before seeking federal habeas relief. Id. at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. See Akins v. Kenney, 410 F.3d 451, 454-55 (8th Cir. 2005).

Moreover, where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005) (quoting Gray v. Netherland, 518 U.S. 152, 162 (1996)). Stated

another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n. 1.

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and issues a "'plain statement' that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *see also Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007) (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation omitted).

## III.  DISCUSSION

## A.  False Statements by Aybar Crawford (Claim One)

Thomas argues he was denied due process of law in violation of the Fourteenth Amendment because the State failed to correct false statements made by Aybar Crawford. (Filing No. 26 at CM/ECF pp. 11-15.) Thomas argues that Crawford, who

was facing sentencing on drug charges when he testified at Thomas's trial, falsely testified that he expected no leniency in exchange for his testimony. (*Id.*)

Aybar Crawford pled guilty to possession of a controlled substance in the Douglas County District Court on May 3, 1994. (Filing No. 10-1 at CM/ECF p. 72.) The shooting at issue in this case occurred on June 17, 1994, a date more than one month *after* Crawford pled guilty to the drug charge. On June 29, 1994, Crawford made a statement to the police about the shooting. (Filing No. 10-11 at CM/ECF p. 19; Filing No. 12-3 at CM/ECF p. 65.) Crawford was not sentenced on the drug charge until after Thomas's trial, approximately one year after he pled guilty to the charge.

At Thomas's trial, Crawford generally testified that he witnessed Thomas shoot at Phillip White and Rafael Petitphait, and that he did not see or hear either man threaten Thomas prior to the shooting. (Filing No. 10-9 at CM/ECF p. 64.) During a break in Crawford's testimony and outside the presence of the jury, Thomas's trial counsel informed the court that Prosecutor Donald Schense had advised him that Crawford was awaiting sentencing on drug charges. (Filing No. 10-10 at CM/ECF pp. 117-118.) In light of this revelation, the court allowed Thomas's trial counsel to cross-examine Crawford about whether he was receiving anything in exchange for his testimony. The following exchange occurred between Thomas's trial counsel and Crawford:

> Q. You pled seven or eight month ago; isn't that true?
> A. Yes.
> Q. And you haven't been sentenced yet; isn't that right?
> A. Yes.
> Q. And you're hoping that your testimony here will help you in terms of getting leniency with respect to the sentence that you will at some point receive; isn't that right?
> A. This couldn't possibly give me leniency. I'm on interstate compact. I'm on probation back in San Diego, California, so anything I do doesn't resolve any help for me whatsoever because if I'm violated here, they

4:11-cv-03161-JFB-PRSE Doc # 43 Filed: 07/16/13 Page 13 of 26 - Page ID # 5194

send me back regardless of whatever. You know what I'm saying? Even if I do get help or don't, they send me back to California.

(Filing No. 10-11 at CM/ECF pp. 19-20.) On re-direct examination, Prosecutor Donald Schense asked Crawford, "have you and I ever talked about your case that you have pending in this courthouse?" (*Id.* at CM/ECF p. 22.) Crawford responded, "No, we haven't." (*Id.*) Prosecutor Schense also asked Crawford whether anyone from the county attorney's office had made any promises in regard to how he was going to be treated in relationship to his charge. Crawford answered, "No, you haven't." (*Id.* at CM/ECF p. 22.)

## 1. State Court Findings

In his "new" direct appeal, Thomas argued that Crawford lied when he stated he was not receiving leniency in exchange for his testimony against Thomas. (Filing No. 12-3 at CM/ECF pp. 143-144.) The Nebraska Supreme Court adjudicated and rejected Thomas's argument on the merits, determining the claim "ha[d] no merit." *See Thomas*, 637 N.W.2d at 655. In reaching its decision, the court refused to consider a copy of a transcript that included hearings on Crawford's plea, sentence, and violation of probation. *Id.*

Notwithstanding the Nebraska Supreme Court's rejection of this claim on direct appeal, the state district court subsequently also considered and rejected the claim in its order denying post-conviction relief. (*See* Filing No. 12-14 at CM/ECF pp. 84-86.) However, the state district court considered the documents the Nebraska Supreme Court had refused to consider. The record before the state district court included transcripts from Crawford's criminal proceedings, and also the deposition testimony of Prosecutor Donald Schense. The transcripts from Crawford's criminal proceedings show that Crawford's sentencing judge sentenced Crawford to a term of probation, instead of sentencing him to prison, because of the testimony he provided against Thomas. (*See, e.g.*, Filing No. 10-1 at CM/ECF p. 90 ("And I'm giving you your break now for what you did in the murder case. . . . Because I had you down for

13

penitentiary time until such time as I found out, and I talked to the authorities about what you did in fact do and the risk that you put yourself in doing it.").)  In addition, Prosecutor Donald Schense's deposition testimony shows that Schense informed Crawford that if Crawford cooperated, his cooperation "would be made known to [Crawford's sentencing] judge."  (Filing No. 12-13 at CM/ECF pp. 27-28.)

Like the Nebraska Supreme Court, the state district court concluded Thomas's claim had no merit.  It wrote, in relevant part:

> Defendant claims the State committed prosecutorial misconduct by allowing one of their witnesses to provide known false testimony. Defendant alleges that Aybar Crawford, an eyewitness to the shooting, lied when he stated that his testimony was not given in exchange for leniency. He also contends the State knew Crawford's testimony was false but did not reveal that to the jury.

> It is well established that a state cannot [] knowingly use false evidence, including false testimony, in order to obtain a conviction. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). *See also State v. Howard*, 182 Neb. 411, 416, 155 N.W.2d 339, 343 (1967) ("It is the knowing use of false testimony or the permitting of false testimony to stand when the prosecution knows the same to be false that is condemned"). In a postconviction proceeding, the defendant has the burden of establishing the prosecution knowingly used false evidence to secure the conviction. *State v. Lotter*, 266 Neb. 245, 267, 664 N.W.2d 892, 911 (2003). *See also State v. Huffman*, 186 Neb. 809, 814, 186 N.W.2d 715, 714 (1971). Here, Defendant has failed to meet this burden.

> The Nebraska Supreme Court previously discussed Defendant's claim for prosecutorial misconduct. *Thomas I*, 262 Neb. at 1007, 637 N.W.2d at 655. During trial, Defendant asked Crawford if he had received anything in exchange for his testimony. *Id.* Crawford denied that any promises were made to him by the State. *Id.* During a break in the proceedings, the State informed Defendant that Crawford had a felony conviction. *Id.* at 1008, 262 N.W.2d at 655. On re-cross, Defendant questioned Crawford about leniency, and Crawford said he would receive no benefit from testifying, because he would be returned

14

4pt

to California for violating probation. *Id.* The State then asked if anyone had made any promises to Crawford, and Crawford again denied that any promises had been made. *Id.* Defendant argues that prosecutorial misconduct occurred when the State did not correct Crawford's denial of a deal. *Id.*

In his first postconviction motion, Defendant obtained a copy of a transcript including hearings on Crawford's plea, sentence, and probation violation. *Id.* The Nebraska Supreme Court noted that these documents were not on the record for direct appeal and would not be considered. *Id.* The Supreme Court then determined that Defendant's assignment of error had no merit. *Id.*

Here, as on direct appeal, Defendant has failed to show the State knowingly used false testimony. The Nebraska Supreme Court has explained:

> "The existence of an agreement to testify by a witness under threats or promises of leniency made by the prosecutor is relevant to the credibility of such witness, and failure to bring that to the attention of the jury denies the defendant due process of law. An expectation of leniency on the part of a witness, absent evidence of any expressed or implied agreement, need not be revealed to the jury."

*State v. Robinson*, 271 Neb. 698, 718, 715 N.W.2d 531, 552 (2006) (internal citations omitted) (emphasis added). Defendant has not produced any evidence of a deal between Crawford and the State in which Crawford would testify in exchange for a promise of leniency. At most, Defendant alleges Crawford may have had an expectation of leniency. Even if Defendant proved Crawford had such an expectation—which he does not—this does not need to be revealed to the jury. The fact that Crawford used his participation in Defendant's trial at Crawford's own sentencing is beside the point. The relevant inquiry is whether the State had an express or implied agreement with Crawford that he would receive leniency in exchange for his testimony. Defendant has not met his burden of proving the existence of any such agreement.

I find this ground for relief to be without merit. Defendant has failed to meet his burden of showing an express or implied agreement existed between Crawford and the State. There is no proof that the State knowingly used false testimony in Defendant's trial, and Defendant's request for relief on this issue is denied.

(Filing No. 12-14 at CM/ECF pp. 84-86.)

## 2.      Clearly Established Federal Law

The relevant United States Supreme Court precedents are *Giglio v. United States*, 405 U.S. 150 (1972), and *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In these cases, the Supreme Court held that prosecutors may not deceive a court and jurors by presenting evidence that they know is false, *Giglio*, 405 U.S. at 153, or allow false testimony to go uncorrected when it appears, *Napue*, 360 U.S. at 269. In *Giglio*, the Supreme Court held that prosecutors may not permit testimony they know to be false to stand uncorrected if "'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" 405 U.S. at 154 (quoting *Napue*, 360 U.S. at 271). In *Giglio*, the government's principal witness testified falsely on cross-examination that he had received no promise of immunity from prosecution. The prosecutor failed to correct the perjury and, in fact, repeated the falsehood in closing argument. The Supreme Court reversed the defendant's conviction because of the reasonable likelihood that the prosecutor's knowing use of perjury on an issue relevant to the witness's credibility affected the jury's decision and thus deprived the defendant of due process. *Giglio*, 405 U.S. at 154-55.

In *Napue*, a key witness for the prosecution at the defendant's murder trial testified falsely that he had received no promises in exchange for his testimony. However, the prosecutor had promised to recommend a reduced sentence for the witness. Despite knowing of the witness's perjury, the prosecutor failed to correct it. The Supreme Court reversed the defendant's conviction because the testimony, which the prosecutor knew to be false, was material (i.e., it could have affected the

outcome of the trial).  *Napue*, 360 U.S. at 272.  Thus, *Napue* and *Giglio* stand for the proposition that the government may not allow perjured testimony at trial to stand uncorrected if there is a reasonable chance that the testimony could have affected the jury's judgment.

### 3.      Deference

Thomas argues that the transcripts from Crawford's criminal proceedings and Prosecutor Schense's deposition testimony establish that Crawford falsely testified that he was receiving no benefit from the State.  The court agrees with Thomas that Schense's statement to Crawford that he would make his cooperation known to the sentencing judge does suggest that Crawford was untruthful when he testified, *upon questioning by Schense*, (1) that he had never spoken to Schense about his pending criminal case, and (2) he had not been promised anything in exchange for his testimony.  However, the court finds this claim fails for two reasons.

First, the state district court's findings of fact and conclusions of law on this issue are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts.  The state district court determined that, at best, Thomas had alleged (but not proven) that Crawford had an "expectation of leniency" when he testified against Thomas.  (Filing No. 12-14 at CM/ECF p. 85.)  Citing state law, the court reasoned that an expectation of leniency need not be revealed to the jury absent evidence of "an express or implied agreement" between Crawford and the State.  (*Id.*)  The court held that Thomas had not shown there was an express or implied agreement between Crawford and the State, and there was "no proof that the State knowingly used false evidence."  (*Id.* at CM/ECF pp. 85-86.)  Upon careful consideration, the court finds that it cannot be said that this "ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 131 S.Ct. at 786-787.  Indeed, in both *Giglio* and *Napue*, the prosecuting authorities admitted at a post-conviction hearing that a promise of leniency *was*

actually made and not revealed to the jury. See *Giglio*, 405 U.S. at 152-153; *Napue, 360 U.S. at 266-267*. *See also Mastrian v. McManus, 554 F.2d 813, 823 (8th Cir. 1977)* (rejecting habeas corpus petitioner's contention that a witness's expectation of leniency must be revealed to the jury, and stating that it did not read *Giglio* and *Napue* to support a claim that an expectation of leniency must be revealed absent evidence of "an express or implied promise" of leniency).

Second, even if the court were to make an independent determination of this claim's merits, it would determine that Thomas is not entitled to relief. Here, there is no reasonable likelihood that Crawford's false testimony could have affected the judgment of the jury. *See Napue, 360 U.S. at 265-72* (holding the knowing use of perjured testimony by the prosecution, including the failure to correct false testimony, constitutes a denial of due process *only if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury*). The jury convicted Thomas of second degree murder, first degree assault, and two counts of use of a firearm to commit a felony. Thomas, himself, testified that he removed a gun from the trunk of his car and used it to shoot Phillip White and Rafael Petitphait, though he alleged he shot them in self-defense.

Thomas argues that Crawford's testimony, in particular, was material to the question of whether or not Thomas acted in self defense because Crawford testified that he did not see or hear either White or Petitphait threaten Thomas prior to the shooting. (Filing No. 26 at CM/ECF p. 6.) However, Crawford's testimony on this issue was cumulative, as Rafael Petitphait testified that neither he nor White threatened Thomas. (*See, e.g.*, Filing No. 10-7 at CM/ECF pp. 106-108; Filing No. 10-8 at CM/ECF p. 1.)

Moreover, Thomas successfully undermined Crawford's credibility throughout the trial. Indeed, the trial court even allowed one of Thomas's witnesses to testify that Crawford was known in the community as being a "habitual liar." (Filing No. 10-14 at CM/ECF p. 88.) A significant part of Thomas's closing argument was

18

devoted to attacking Crawford's credibility.  (*See* Filing No. 10-19 at CM/ECF pp. 66-69.)  Thomas's trial counsel went as far as to argue that Crawford gathered information about the shooting from others, and then used it "to get leniency."  (*Id.* at CM/ECF p. 67.)  Thus, even assuming Crawford's testimony was false and the prosecution allowed it to go uncorrected, the court finds that there is no reasonable likelihood that the prosecution's failure to correct Crawford's testimony could have affected the jury's judgment.  For these reasons, a grant of a writ of habeas corpus is not warranted on this issue.

## B.     False Statements by Roger Tucker (Claim Three)

Thomas argues he was denied due process of law in violation of the Fourteenth Amendment because the State failed to correct false statements made by the State's witness, Roger Tucker.  (Filing No. 26 at CM/ECF pp. 17-18.)  At trial, Tucker denied having ever been convicted of a felony.  (Filing No. 10-11 at CM/ECF p. 53.) Thomas argues the State knew, prior to Tucker's testimony, that Tucker had a felony conviction because Prosecutor Donald Schense testified in a deposition that he routinely checked the conviction records of his witnesses.  (Filing No. 26 at CM/ECF p. 17.)

Respondent argues that Thomas procedurally defaulted this claim because he did not raise it in his "new" direct appeal.  (Filing No. 30 at CM/ECF p. 35.)  The court agrees.  The Tucker issue relates to a matter that occurred during Thomas's trial, and Prosecutor Schense's deposition was taken prior to Thomas's "new" direct appeal.  Accordingly, Thomas could have litigated the claim on direct appeal and, under  Nebraska law, he was required to do so.  *See Hall*, 646 N.W.2d at 579 ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal.").

Despite Thomas's failure to raise the claim in his "new" direct appeal, the state district court considered and rejected the claim in its order denying post-conviction relief.  (See Filing No. 12-14 at CM/ECF pp. 90-91.)  It wrote:

> Defendant argues the State failed to correct witness Roger Tucker's testimony concerning a prior felony conviction. Defendant contends that Tucker lied when he testified he had no prior felony convictions. (BOE 1002:15-19). Defendant alleges that Tucker actually has been convicted of a Class IV felony, to wit: driving on a suspended license.
>
> As noted in section (11), "[i]t is the knowing use of false testimony or the permitting of false testimony to stand when the prosecution knows the same to be false that is condemned." *Howard*, 182 Neb. at 416, 155 N.W.2d at 343. That is, false testimony alone does not violate a defendant's rights; rather, the State must know the testimony to be false and use it anyway. Defendant has failed to offer any evidence that the State knowingly adduced false testimony from Roger Tucker. Defendant relies instead on unsupported allegations. Indeed, on the record, it is not apparent that Tucker is lying at all, but rather is confused. Tucker was 66 years-old at the time of the trial. (BOE 972:7-10). He was asked by defense counsel Davis, on cross examination, whether he had ever been convicted of a felony. (BOE 1002:15). Tucker asked defense counsel what a felony was. (BOE 1002: 16). Defense counsel told Tucker it was a crime punishable by more than one year in the state penitentiary. (BOE 1002:17-18). Tucker then replied he had not been convicted of a felony. (BOE 1002:19). This exchange can easily be read as Tucker failing to understand the meaning of "felony," rather than as a bald-faced lie that discredits his testimony.
>
> Regardless, the record does not support Defendant's conclusory allegations that the State knowingly offered false testimony or failed to correct known false testimony. Moreover, Defendant has offered nothing in support of this charge. In a postconviction proceeding, the defendant has the burden of establishing the prosecution knowingly used false evidence to secure the conviction. *Lotter*, 266 Neb. at 267, 664 N.W.2d at 911 (2003). Defendant has failed to meet this burden.

(*Id.*)

The state district court's findings of fact and conclusions of law on this issue are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts.  Moreover, this court agrees with the state district court's determination that this claim lacks merit.  As they were in the state district court, Thomas's allegations on this issue are conclusory and unsupported by any evidence.  Accordingly, a grant of a writ of habeas corpus is not warranted on this issue.

**C.      Ineffective Post-Conviction Counsel (Claims Two and Four)**

Thomas argues that his post-conviction counsel was ineffective when he failed to assign the Aybar Crawford and Roger Tucker issues as errors to the Nebraska Supreme Court after the state district court denied relief on the issues.  (Filing No. 26 at CM/ECF pp. 15-16, 18-19.)  Thomas is not entitled to habeas relief on his claims of ineffective assistance of post-conviction counsel, as there is no constitutional right to an attorney in state post-conviction proceedings.  *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (holding a petitioner cannot claim constitutionally ineffective assistance of counsel in state post-conviction proceedings as there is no constitutional right to an attorney in state post-conviction proceedings).[2]

**D.      Failure to Give Manslaughter Instruction (Claim Five)**

---

[2]Thomas's claims do not implicate the Supreme Court's holding in *Martinez v. Ryan*, 132 S.Ct. 1309, 1319-20 (2012) (holding that inadequate assistance of counsel during initial-review collateral proceedings may establish cause for procedural default of a claim of ineffective assistance at trial where the initial-review collateral proceeding is the first proceeding in which the prisoner can raise his claim of ineffective assistance at trial).

Thomas claims that the trial court "failed in its duty to properly instruct the jury" when it did not give a manslaughter instruction.  (Filing No. 26 at CM/ECF p. 19).  Thomas raised this issue to the Nebraska Supreme Court in his "new" direct appeal.  The Nebraska Supreme Court adjudicated and rejected Thomas's argument on the merits.  The Nebraska Supreme Court wrote:

> Next, Thomas argues that the jury was not given an appropriate manslaughter instruction. Because the record does not suggest that Thomas requested a manslaughter instruction, the question is whether there was any evidence from which a jury could conclude that he committed manslaughter. "A person commits manslaughter if he kills another without malice, either upon a sudden quarrel, or causes the death of another unintentionally while in the commission of an unlawful act." Neb.Rev.Stat. § 28-305(1) (Reissue 1995).

> Thomas claims that a jury could have found that he killed White upon a sudden quarrel because both Thomas and another witness testified that words were exchanged between Thomas and the occupants of White's vehicle. A sudden quarrel is a legally recognized and sufficient provocation which causes a reasonable person to lose normal self-control. *State v. Lyle*, 245 Neb. 354, 513 N.W.2d 293 (1994). The evidence does not support an inference that Thomas shot at White's car as the result of a sudden quarrel.

> Thomas also claims that a jury could have found that he unintentionally killed White while in the commission of an assault on Petitphait. The record includes no evidence from which a jury could infer that Thomas intended to shoot at Petitphait but not at White. The assignment of error regarding the manslaughter instruction has no merit.

*Thomas*, 637 N.W.2d at 654-655.

The Nebraska Supreme Court's findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts.  The Nebraska Supreme Court reviewed

22

all of the evidence and determined that there was no evidence from which a jury could conclude that Thomas committed manslaughter.  The court agrees.

Moreover, the Eighth Circuit Court of Appeals has held that the failure to give a lesser-included-offense instruction in a noncapital case rarely, if ever, presents a constitutional question. *Pitts v. Lockhart*, 911 F.2d 109, 112 (8th Cir. 1990).  Indeed, the Supreme Court has never held that the failure to give a lesser-included offense instruction in a noncapital case was a violation of the Constitution.  In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court held that, in a capital case, the failure to instruct the jury on a lesser included offense violates the Due Process Clause if there was evidence to support the instruction.  The *Beck* Court expressly declined to decide whether the Due Process Clause requires the giving of a lesser included offense instruction in a non-capital case.  *Id.* at 638 n. 14.  Because the Supreme Court has not decided whether there is a constitutional right to a lesser-included-offense charge in noncapital cases, the Nebraska Supreme Court's decision on this matter cannot be said to have been "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A grant of a writ of habeas corpus is not warranted on this issue.

## E.    Destruction of Evidence (Claim Six)

Thomas claims that his right to a fair trial was violated when Crime Scene Investigator David Kofoed tampered with and destroyed evidence material to Thomas's self-defense claim.  (Filing No. 36 at CM/ECF p. 20.)  Thomas's theory is that Kofoed, who was involved in evidence collection in Thomas's case, "removed and destroyed [a] loose unfired cartridge" from the evidence and that this unfired cartridge (had it been tested) would have provided evidence that the cartridge was misfired.  (*Id.* at CM/ECF p. 23.)  Thomas claims that this evidence would have supported his testimony at trial that Phillip White attempted to fire his gun at Thomas.  (*Id.*)

23

Thomas raised a similar claim to the state district court in a "Motion for New Trial and DNA Testing" filed on May 21, 2010.   (Filing No. 12-15 at CM/ECF pp. 17-24.)  The state district court adjudicated and rejected the argument on the merits. (*See* state district court's order denying motion for new trial at *id.* at CM/ECF pp. 26-29.)  The Nebraska Supreme Court summarily affirmed the state district court's decision on the issue.  (Filing No. 12-16 at CM/ECF p. 20.)  In denying the claim, the state district court wrote, in relevant part:

> Defendant now argues that David Kofoed, a crime scene investigator, formerly employed by the Omaha Police Division and Douglas County Sheriffs Office; destroyed evidence material and exculpatory to defendant's case, and seeks a new trial under §29-2101 Neb. Rev. Stat. . . .

> Defendant has failed to file this motion in a timely manner, and it should be denied. Even if defendant had timely filed his motion, it should still be denied because the defendant makes only conclusions concerning the activities of Mr. Kofoed. Defendant asserts that because District Judge Reimier found Kofoed guilty of planting evidence in 2006 and of similar behavior in 2003, Kofoed must have intentionally destroyed evidence favorable to the defendant during defendant's trial in 1995. This conclusion is not supported by evidence in the record of the trial, and should be denied. . . .

> The defendant alternately seeks post conviction relief. . . . [T]he defendant's own testimony at trial makes the existence of unfired bullets irrelevant to his defense of self-defense. Defendant testified:

> > "When I seen the gun, I ducked. And when I ducked, you know, with the break, I heard pow. I just came up, and I started shooting. I shot and then they sped off."

> > (T:1870:22-24).

> > Q. Ok. And so when you got up into that general area and they pointed the gun, did you see the gunfire?

> A. No, because when they pointed the gun, I ducked. And as soon as I ducked and I tried, you know, run, like this pole, that pole right here (indicating), I was going towards it, like a step from it, I heard the shot, pow. And it came from that direction. When I turned around like this (indicating), the driver still had the gun pointed my way, and I started shooting. I never seen the firing of the gun, you know.
>
> (T: 1876:21-1877:5).
>
> It is clear from Mr. Thomas' own testimony that he responded to a gun being actually fired at him, and not a "dud", as he suggests. Why the two cartridges that were collected as evidence are missing does not give rise to a claim for post conviction relief[.]

(Filing No. 12-15 at CM/ECF pp. 28-29.)

The state courts' findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Moreover, this court agrees with the state district court's disposition of this issue. Thomas's contentions that David Kofoed tampered with and destroyed evidence in his case are based entirely on speculation and conjecture. In addition, having reviewed Thomas's trial testimony, the court agrees that Thomas's own testimony makes the existence of unfired bullets irrelevant to his claim of self-defense. Thomas's self-defense claim at trial was based on his testimony that he fired his weapon because *he heard a shot fired at him*. (*See* Thomas's trial testimony at Filing No. 10-18 at CM/ECF p. 36.) Thomas's claim that David Kofoed tampered with and destroyed evidence lacks merit, and Thomas is not entitled to a writ of habeas corpus on this claim.

## IV.  CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Thomas has failed to make a substantial showing of the denial of a constitutional right.  The court is not persuaded that the issues raised in the Second Amended Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.  Accordingly, the court will not issue a certificate of appealability in this case.

IT IS THEREFORE ORDERED that:

1.     This matter is dismissed with prejudice, and a separate judgment will be entered in accordance with this Memorandum and Order.

2.     The court will not issue a certificate of appealability in this matter.

DATED this 16th day of July, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.